2014 PA Super 287

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CORY JAMES TUCKER, | |
| Appellant | No. 399 MDA 2013 |

Appeal from the Judgment of Sentence February 4, 2013
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000141-2012

BEFORE:  BOWES, WECHT, and MUSMANNO, JJ.

OPINION BY BOWES, J.:                    **FILED DECEMBER 23, 2014**

Cory James Tucker appeals from the judgment of sentence of thirty-nine to ninety months imprisonment that the court imposed after Appellant was convicted of aggravated assault by vehicle while driving under the influence, driving under the influence ("DUI"), and related charges.  We reject Appellant's challenge to the sufficiency of the evidence supporting his conviction of aggravated assault by vehicle while DUI and affirm.

The pertinent trial evidence was as follows.  At approximately 2 p.m. on December 14, 2011, Wendy Van Horn was traveling to her home in Towanda, Pennsylvania.  As she was driving across the two-lane James Street Bridge, Ms. Van Horn noticed a pickup truck in her lane and coming straight at her car.  She pulled to the right and sounded her horn to alert Appellant, who was driving the truck, that he was going to strike her.

That action had no effect on Appellant, who continued on course at the same speed. Ms. Van Horn testified, "I was hit head on. The person who was driving, didn't slow down, [he] hit me head on." N.T. Trial, 9/20/12 (a.m. session), at 17. Ms. Van Horn's car was completely within its lane of travel when it was struck by Appellant's pickup truck. Ms. Van Horn's air bag deployed, and she was unable to exit her car. She suffered a severely fractured leg, was covered in blood, and experienced difficulty breathing.

Ms. Van Horn reported that, after the vehicles collided, Appellant exited his truck and "walked up to the passenger side" of her car. *Id*. at 19. The witness continued, "[Appellant] was staring at me while I was begging and pleading for him to help me." *Id*. Appellant "said absolutely nothing, he was silent. And he returned to his truck." *Id*. at 20. Eventually, emergency personnel arrived and extricated Ms. Van Horn from her vehicle. She was hospitalized for two months and nine days. In addition to the fractured leg, which required five surgeries, Ms. Van Horn had two nasal fractures, a broken clavicle, and a fracture to her orbital bone.

Pennsylvania State Trooper John E. Kern, Jr. responded to the scene. He reported that the victim's vehicle was so badly damaged that it was impossible to remove her manually. After Pennsylvania State Trooper Brandon Allis arrived, Trooper Kern told him to speak with Appellant since Appellant was not acting normally. Appellant admitted to Trooper Allis that he was driving with a suspended license, which was confirmed by documentation submitted by the Commonwealth at Appellant's trial.

- 2 -

Appellant told the trooper the following. He planned to travel to a business establishment called Stropes, where he had shopped before, when he realized he was traveling in the wrong direction. Appellant turned around and started toward James Street Bridge. Appellant "said for an unknown reason he lost control and went over into the oncoming lane and struck the victim." *Id*. at 39. Appellant also informed Trooper Allis that he borrowed the truck from a friend, but Appellant was unable to remember the person's last name. Trooper Allis delineated that Appellant "seemed kind of confused, his responses to my questions were very slow, like a lethargic manner. He appeared to have slurred speech, his pupils of his eyes were constricted. And also glassy and bloodshot." *Id*. at 40.

Trooper Allis approached Appellant's vehicle and saw in plain view "a syringe on the floor of the truck and also a . . . spoon with the handle cut off, and it had a white residue on . . . the spoon." *Id*. Trooper Allis determined that Appellant was driving under the influence and arrested him. Appellant agreed to have his blood drawn.

Toxicologist Dr. Edward John Barbieri reported the results of Appellant's blood testing. Appellant had methylenedioxypyrovalerone ("MDPV"), a prohibited federally classified Schedule I drug, in his system. *Id*. at 58. MDPV is a drug with stimulant properties and with effects similar to methamphetamine in small doses and cocaine in higher doses. MDPV can also have psychedelic effects and produce insomnia, agitation, anxiety, and panic attacks. The brain has a negative reaction to this stimulation, and "as

the drug is being eliminated from the body, . . . we tend to see lethargic or sedative type behavior[.]" ***Id***. at 57.

Based on this proof, Appellant was adjudicated guilty of, *inter alia,* aggravated assault by motor vehicle while DUI. In this appeal, he contests the sufficiency of the evidence supporting this conviction on the single ground that the Commonwealth failed to establish that the accident was caused by his ingestion of MDPV. Specifically, Appellant's issue on appeal is: "Whether the Commonwealth presented sufficient evidence to establish that the accident was caused by MDPV intoxication." Appellant's brief at 9.

The offense of aggravated assault by vehicle while DUI is defined under 75 Pa.C.S. § 3735.1, which states:

> **(a)** **Offense defined.**—Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802[1] (relating to driving under

---

[1] That statute states in pertinent part:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled

*(Footnote Continued Next Page)*

influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S. § 3735.1.

Appellant acknowledges in his brief that he is neither contesting the element of serious bodily injury nor that he was convicted of § 3802. He maintains that there was not enough proof that the collision was the result of his intoxication with MDPV. Appellant notes that while there is legal authority discussing causation with respect to the homicide by vehicle while DUI statute, 75 Pa.C.S. § 3735, none examines causation for the crime in question. Significantly, both statutory provisions mandate that the DUI be the cause of the accident. Specifically, homicide by vehicle while DUI states that any person "who unintentionally causes" the death of another as a result of a violation of § 3802 is guilty of a crime "when the violation is the cause of death[.]" 75 Pa.C.S. § 3735(a). Likewise, aggravated assault by vehicle while DUI outlines that any person who "negligently causes" serious bodily injury to another as a result of a violation of § 3802 is guilty of a crime "when the violation is the cause of the injury." 75 Pa.C.S.

_(Footnote Continued)_ ─────────────

Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S. § 3802(d).

§ 3735.1(a). Accordingly, we will apply the reasoning of the case law discussing causation in the context of homicide by vehicle while DUI.[2]

In **Commonwealth v. Lenhart**, 553 A.2d 909 (Pa. 1989), our Supreme Court reversed a conviction for homicide by vehicle while DUI. While the defendant therein was driving under the influence of alcohol, the Commonwealth failed to establish how the accident occurred. Two cars collided on a two-lane highway, and there were no witnesses. The

_____

[2] **Commonwealth v. Spotti**, 94 A.3d 367 (Pa.Super. 2014) (*en banc*), did examine causation for purposes of aggravated assault by vehicle while DUI. Spotti was convicted of four counts of that offense and maintained that he did not cause the accident that resulted in the injuries to the victims in question. Spotti was driving erratically on a four-lane state highway and was reported to police by other motorists. His vehicle was spied by state police, who began to pursue Spotti with their emergency lights activated. Spotti, who was in the left lane, abruptly moved into the right lane and braked in front of another motorist, who was forced to leave the highway to avoid striking Spotti's car. That motorist collided with a van on the berm. The motorist, his passenger, and two people on the side of the road were injured. Spotti was arrested and had a blood alcohol content in excess of .2%. Spotti maintained that there insufficient evidence to support the aggravated assault by vehicle while DUI. He claimed that the motorist who left the road was the intervening legal cause of the accident. Spotti focused upon the fact that his vehicle did not collide with anyone or anything and averred that the other motorist's negligence was the cause of the injuries in question.

That case does not examine causation in the same context as that presented herein. The issue in **Spotti** was whether the motorist who left the highway and struck the four victims was the cause of the accident for purposes of criminal liability. Herein, Appellant collided directly with Ms. Van Horn's car. The question is whether his ingestion of MDPV was responsible for Appellant's own actions that resulted in his collision with the other car. In contrast, in **Spotti**, this Court examined whether another motorist's negligence was an intervening cause of the crash. Hence, **Spotti** does not analyze the same question as the one posed in this case.

Commonwealth failed to prove that the defendant left his lane of travel since both vehicles were discovered in their own lanes and the debris was evenly distributed between the two sides of the road. The Commonwealth proferred no evidence from an accident reconstruction expert or any other expert witness. Given that a factfinder would have to speculate as to whether the defendant left his lane of travel, our Supreme Court held that there was insufficient proof that the defendant's intoxication resulted in the accident and caused the other motorist's death.

The Court observed, "It was stipulated that [the victim] died of injuries suffered in the accident, so the causation in question is whether appellant's drunk driving caused the accident." *Id*. at 911. It noted that typical "forms of proof such as eyewitness testimony, skid marks, or accident reconstruction expert testimony, were entirely absent from this case," and that it was pure speculation as to whether the defendant went into the oncoming lane of traffic to strike the other car. *Id*. It ruled, "The scanty evidence of record in this case simply fails to prove that appellant caused the accident." *Id*. at 912. It therefore vacated the defendant's conviction under § 3735.

Herein, there was clear and unequivocal testimony regarding who was responsible for the collision. Ms. Van Horn outlined that Appellant was in the incorrect lane of travel, as supported by the location of the vehicles after the accident, and drove head-on into her car. There also was sufficient evidence

to establish, beyond a reasonable doubt, that Appellant's intoxication with MDPV was the reason that he operated his car in that manner.

Appellant was traveling down a road in broad daylight and admittedly could not explain why he went into the wrong lane. After Ms. Van Horn alerted him to the peril by sounding her horn, Appellant did not respond. He neither slowed his pickup truck nor swerved to avoid her car. After the wreck, Appellant displayed bizarre behavior. He approached the victim, stared at the screaming woman, and returned to his truck, and made no effort to comfort or aid her. Appellant admitted that, when he first started to travel, he actually went in the wrong direction to reach his stated destination. He was confused, lethargic, slurred his speech, and had glassy and bloodshot eyes. These circumstances established beyond a reasonable doubt that the MDPV caused Appellant's behavior and the accident in question.

While Appellant focuses upon the fact that the Commonwealth's toxicologist, Dr. Barbieri, reported that MDPV is a stimulant, he ignores that Dr. Barbieri also stated that lethargy is a secondary side effect of the drug as the body attempts to purge that substance. Herein, the Commonwealth established beyond a reasonable doubt the appropriate nexus between Appellant's intoxication while driving and the accident in question. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014